IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


PAUL PHILLIPS,

        Plaintiff,


v.                      CIVIL ACTION NO. 1:05CV147
                                 (Judge Keeley)

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.


## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Rule 72(b), Federal Rules
of Civil Procedure and Local Court Rule 4.01(d), on October 28,
2005, the Court referred this Social Security action to United
States Magistrate John S. Kaull with directions to submit proposed
findings of fact and a recommendation for disposition. On
January 16, 2007, Magistrate Kaull filed his Report and
Recommendation and directed the parties, in accordance with 28
U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any
written objections with the Clerk of Court within ten (10) days
after being served with a copy of the Report and Recommendation. On
January 25, 2007, plaintiff, Paul Phillips, through counsel, Regina
Carpenter, filed objections to the Magistrate's Report and
Recommendation. On February 1, 2007, the Commissioner of Social
Security filed a response to the objections.  On February 5, 2007,

counsel for the plaintiff filed a reply to the Commissioner's response. The matter is now ripe for decision.

## I.  PROCEDURAL BACKGROUND

On December 26, 2002, Paul D. Phillips ("Phillips") filed an application for Disability Insurance Benefits ("DIB") alleging disability since July 25, 2001, due to a herniated disc in his neck, diabetes, degenerative disc disease and arthritic changes. The Commissioner denied the application initially and on reconsideration. Phillips requested a hearing, and, on December 16, 2003, an Administrative Law Judge ("ALJ") conducted a hearing at which Phillips, represented by counsel, testified along with his wife, Libby Phillips, and a Vocational Expert ("VE").  On March 23, 2004, the ALJ determined that Phillips was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. On August 25, 2005, the Appeals Council denied Phllips' request for review making the ALJ's decision the final decision of the Commissioner.  On October 28, 2005, Phillips filed this action seeking review of the Commissioner's final decision.

## II.  PLAINTIFF'S BACKGROUND

On the date of the hearing Phillips was fifty-three (53) years old and is considered an individual approaching advanced age. He has a high school education as well as a college degree in

2

marketing that he has never used. He has twenty-two (22) years of past work experience in receiving and distribution for the power company. In 1998, he received long-term disability and stopped working.

## III.   ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ made the following findings:

1.   Phillips met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of this decision;

2.   Phillips has not engaged in substantial gainful activity since the alleged onset of disability;

3.   Phillips' neck pain syndrome with C5-6 and C6-7 bulging discs, degenerative spondylosis and a general anxiety disorder are considered "severe" based on the requirements in Regulation 20 CFR § 404.1520(c) but do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Even if Phillips met the "A" requirements of listing 12.06, his limitations for the "B" requirements were "mild", "mild", "moderate", and "none", which did not meet the requirements in "B". Additionally, there was no evidence of the presence of the "C" criteria, therefore, Phillips does not meet the "A and B" or the "A and C" requirements of listing 12.06 as required;

4.   Phillips' allegations regarding his limitations were not totally credible;

5.    Phillips has the residual functional capacity for a
      limited range of light work. He is unable to lift
      and carry any amount of weight frequently, cannot
      do work overhead, can occasionally lift up to 20
      pounds, can sit for up to two hours in an eight-
      hour workday for up to one-half hour at a time, can
      stand up to six hours in an eight-hour workday for
      up to one-half hour at one time, and can walk for
      up to six hours in an eight-hour workday for up to
      one-third of an hour at one time;

6.    Phillips is unable to perform any of his past
      relevant work (20 CFR § 404.1565);

7.    Phillips is considered an "individual closely
      approaching advanced age" (20 CFR § 404.1563);

8.    Phillips has "more than a high school education"
      (20 CFR § 404.1564);

9.    Phillips has no transferable skills from any past
      relevant work and/or transferability of skills is
      not an issue in this case (20 CFR § 404.1568);

10.   Phillips has the residual functional capacity to
      perform a significant range of light work (20 CFR
      §404.1567);

11.   Although his exertional limitations do not allow
      him to perform the full range of light work, using
      Medical-Vocational Rule 201.16 as a framework for
      decision-making, there are a significant number of
      jobs in the national economy that he could perform,
      including inspector/checker, with 111,000 in the
      national economy and 800 jobs in the regional
      economy; desk attendant, with 55,000 jobs in the
      national economy and 200 jobs in the regional
      economy; and laundry folder, with 48,000 jobs in
      the national economy and 300 jobs in the regional
      economy. The sampling of jobs provided by the
      vocational expert does not appear to have
      requirements in the *Dictionary of Occupational
      Titles* (DOT) that would exceed the limitations of
      the claimant; and

12. Phillips was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(e)).

## IV.  PLAINTIFF'S OBJECTIONS

Phillips objects to the Magistrate Judge's report and recommendation and contends that the ALJ erred in determining that he did meet the requirements for Listing 1.04 and failed to reduce his residual functional capacity ("RFC") based on clear evidence of a significant worsening in his condition.

## V.  MEDICAL EVIDENCE

The evidence of record included the following:

1. A March 23, 1998, report from an MRI of the cervical spine indicating a mild reversal of the normal lordotic curvature of the cervical spine at the C4/5 level, normal appearance of the vertebral bodies as well as normal marrow signal characteristics, anterior marginal osteophyte formation at the C5/6 levels, normal craniovertebral and cervicomedullary junctions, normal appearance to the cervical cord, a 3-4 mm central subligamentous disc herniation at the C4/5 level, no impingement on the cervical cord, disc osteophyte complexes at the C5/6 and C6/7 levels with no impingement on the cervical cord;

2. An April 20, 1998 report from Joseph L. Voelker, M.D., a neurosurgeon with the Neurosurgery Outpatient Clinic at West Virginia University, indicating that during the office visit

Phillips was "quite anxious" and nervous. Examination revealed normal motor strength in all groups, decreased sensation over the left thumb, 2+ reflexes bilaterally and symmetric, negative Tinel sign, Phalen's test and Spurling's compression tests, non-tender neck to palpation, and pain with rotation of his head to the left and with neck extension. Dr. Voelker reviewed the cervical MRI and indicated that it showed a mild right C5-6 disc bulge and also a mild left C6-7 disc bulge with no underlying nerve root compression.

Dr. Voelker did not recommend surgical treatment because, although Phillips had a chronic pain condition, he had no radiculopathy on examination and no significant nerve root compression. He did note that Phillips might benefit from a further course of physical therapy as well as anti-inflammatory medications.

When Phillips asked if he would qualify for disability, Dr. Voelker replied that he did not perform disability evaluations and recommended that, if this information was needed, Phillips should be seen by a physician trained in disability determinations;

3.   An October 26, 1998 letter from Kelly R. Nelson, M.D., to Russell Biundo, M.D., referring Phillips for an evaluation. Dr. Nelson states that "[a]t this stage, Paul basically thinks that he is disabled. He does not feel that he is able to do any meaningful

6

employment. I am seeking your evaluation of him regarding your opinion about his employability and his level of functioning and/or disability";

4.     A November 30, 1998 consultation evaluation report from Russell Biundo, M.D., indicating:

> He is a nice gentlemen who appears to be anxious and concerned about his current status. vital signs are in normal limits. Lungs are clear. Heart S1, S2. No. S3, S4. Abdomen is soft, non-tender. No masses, no organomegaly. No rebound. No hepatosplenomegaly. Bowel sounds present in all four quadrants. Pupils are equal and reactive to light accommodation. Oropharynx throat is unremarkable.
>
> Neck reveals a tendency for the patient to maintain his neck with a decrease in cervical lordosis. In terms of range of motion, he is tolerating flexion fully when he is laying down. Rotation to about 80 ° on each side. Extension - he is able to reach almost full extension. However, he is apprehensive. He avoids extension because he does have pain over the left cervical paraspinals distally. Again, over the cervical scapular junction primarily.
>
> Muscle strength reveals to be about equal. There is a lot of give-away weakness. This appears to be more because of anxiety. Deep tone reflexes are normal. No tremors. No abnormal movements. No abnormal reflexes. No atrophy noted.
>
> Scapular assessment appears to be unremarkable.
>
> Neurovascular assessment in the upper and lower extremities is normal. He did have pain

with compression of the cervical spine,
especially on axial compression.

In terms of patient's gait, it is within
normal limits.

Mood appears to be very concerned.

Dr. Biundo further noted that Phillips stated his many years of

therapy were not helpful and that he

was not eager to undergo further interventions
at this point since he is able to take care of
his pain fairly well by using traction, ice
and modalities and he does not wish to undergo
anything else.

Dr. Biundo concluded:

Because of his complicated social system and
his psychosocial status, it appears that he
would best be fit to be disabled at this
point. He seems to have a great concern for
his family and children. He feels that he
will loose [sic] everything if he returns to
work because he would not be able to return to
gainful employment and, thus, not be able to
provide benefits and insurance coverage,
especially medical insurance coverage for his
children.

Thus, it appears best for this patient, and
his family, for him to be disabled. Although
I did recommend that there are different
interventions that may be helpful even while
he is on disability. He can somehow engage in
some therapeutic intervention. He is still
not interested in this at this point;

5. A December 7, 1998 "To Whom it May Concern" letter from

Dr. Nelson indicating:

> After a rather extensive evaluation, Dr.
> Biundo feels that Plaintiff would fit into the
> classification of being disabled at this
> present time. Dr. Biundo feels that he can
> offer Mr. Phillips some intervention which
> might help his pain and problem, but he
> basically feels that Mr. Phillips should be
> allowed total and permanent disability;

6.    A February 5, 2001 office note from Dr. Nelson indicating Phillips lost three pounds, was feeling "pretty good", was still nervous, anxious and shaky, still reported pain in his neck and pain going down his arms, no chest pain or shortness of breath and was "getting along pretty well." Dr. Nelson recommended a lipid and LFT and glucose test, continued exercise and dietary intervention, refills of Celebrex and Loratab, and return for problems;

7.    A March 25, 2001, office note from Dr. Nelson indicating significant pain, stiffness and soreness over his neck and pain radiating down his bilateral arms, right greater than left. He was "[j]ust a little bit stiff and sore";

8.    A May 21, 2001, office note from Dr. Nelson indicating Phillips was "[g]etting along quite well, with the cough and congestion and sore throat. Also some stiffness and soreness over his neck. Otherwise the pain runs down his arms on an intermittent bases [sic]";

9.    A June 20, 2001, office note from Dr. Nelson indicating Phillips was "[s]till having stiffness and soreness down his neck.

Real stiff and sore.  Having some pain radiating down both arms, left greater than right".  Dr. Nelson noted that "[a]t this stage we are going to fill out some more disability papers on him." Dr. Nelson refilled the prescription for Lortabs and directed Phillips to return for problems;

10.  A September 21, 2001, office note from Dr. Nelson indicating Phillips was "getting along well" but was "having a little bit of flare-up of his pain" and "also having some muscle spasms, a little bit stiff and sore."  Dr. Nelson increased the dosage of Lortab to 7.5 and prescribed Flexeril 10 mg for the muscle spasms to use on an as-needed basis;

11.  An October 23, 2001, office note indicating that, while moving a box, Phillips felt something pull in his hand.  Dr. Nelson noted a little swelling. Examination revealed good range of motion and 5/5 strength and a fracture of the right fourth finger. Dr. Nelson recommended a splint for one week and decreased activity;

12.  A November 27, 2001, office note from Dr. Nelson indicating Phillips experienced pain over his neck with some radiation of the pain down his arms and that he was "just real stiff and sore". Dr. Nelson refilled the Lortab 7.5 and directed Phillips to follow up for any exacerbation of problems;

13.  A January 18, 2002, office note from Dr. Nelson indicating Phillips was "getting along fairly well", had gained two

pounds, was trying to diet and exercise, and was having "a significant amount of neck pain running down his arm". Dr. Nelson continued his current medications and ordered a lipid and LFT;

14.  A March 18, 2002, office note from Dr. Nelson indicating Phillips is getting along "fairly well", has "some pain of his neck and numbness down both arms.  Otherwise really no change in statis [sic]."  Examination revealed good flexion and extension. Dr. Nelson refilled the Loratabs .5 mg and the Flexeril and directed Phillips to return in two months or sooner if any problems;

15.  A May 16, 2002, office note from Dr. Nelson indicating Phillips was "getting along fairly well", was having some stiffness and soreness over his neck, but was otherwise doing "OK."  Dr. Nelson noted Phillips reported he was "[j]ust a little bit stiff and sore both over his neck and his low back otherwise getting along well";

16.  A May 16, 2002 form completed by Dr. Nelson for Phillips' disability insurer indicating persistent cervical radiculopathy with subjective symptoms of "pain over neck and down bilat[eral] arms" and a progressively worsening prognosis. Dr. Nelson limited Phillips to less than 30 minutes standing, less than 30 minutes walking, less than 30 minutes sitting, lifting of 10 pounds, a severe limitation of functional capacity and incapable of

minimal(sedentary) activity.  Dr. Nelson opined that Phillips had a permanent disability due to severe cervical radiculopathy;

17.  An August 15, 2002, office note from Dr. Nelson indicating Phillips was still getting along "quite well", had lost five pounds and felt "good";

18.  An October 23, 2002 office note from Dr. Nelson indicating Phillips was "[g]etting along fairly well" but "[s]till having significant soreness and stiffness, over his neck and his back.  Otherwise doing pretty well.  Trying to diet and exercise."

19.  An October 23, 2002 letter address to "To Whom it May Concern" from Dr. Nelson, indicating

> I am writing to you in reference to Mr. Paul Phillips and his claim for Social Security Disability Benefits in support of that claim. Mr. Phillips has followed with me for a number of years with pain over his neck. He continues to have bilateral cervical radiculopathy with pain in both arms as well as numbness, weakness and tinging in his left hand and upper extremity. He continues to suffer with stiffness and pain in his neck with frequent flare-ups of muscle spasms.  From time to time he does have rather severe exacerbations with increased inflammation, which cause him to not be able to sleep, which really limits any activities he is able to perform.  These exacerbations are unpredictable and are not always caused by physical exertion. He does have pain on an every day and ongoing basis and certainly the pain happens so frequently and these flare-ups happen so frequently that he would not be a good candidate for work.

He has been seen by a number of individuals and had MRIs. He has been seen by Dr. Volker, Department of Neurosurgery at West Virginia University. Dr. Biundo, local physiatrist [sic] and has received physical therapy by Affiliated Physical Therapy. None of these methods or measures have offered him any meaningful, long-term results.

He continues to do at home traction; uses ice therapy and warm soaks. Unfortunately even with all these activities he is often up basically throughout the night with pain. Because of this and because of the medication he is on both for pain relief and for muscle spasm relief, he does have a significant amount of daytime drowsiness and oftentimes has to take naps. He is forced to change positions frequently from standing to sitting to lying and is unable to perform many of the activities of daily living.

At this stage it is my opinion that this gentleman is totally disabled from any kind of work that he would be qualified for by any reasons, previous work experience, or education due to the combined effect of his above injuries and the medication he is on. I do not feel that he is able to engage in any substantial gainful activity or acquire skills or abilities comparable to those of any gainful activities in which he was previously engaged with any regularity over any substantial period of time.

20. A December 5, 2002, form completed by Dr. Nelson for Phillips' disability insurer indicating a diagnosis of "Persistent Cervical Radiculopathy", listing "subjective symptoms" as "pain over neck and down bilat[eral] arms", noting progress as "progressively worsening" and limiting standing to less than 30

minutes, walking to less than 30 minutes, sitting to less than 30 minutes, and lifting to less than 10 pounds. Dr. Nelson checked the box marked: "Severe limitations of functional capacity; incapable of minimal (sedentary) activity" and noted "permanent disability [due to] severe cervical radiculopathy". Additionally, Dr. Nelson noted Phillips was not a suitable candidate for further rehabilitation services and that his job could not be modified to allow for his impairment;

21. A January 20, 2003, office note from Dr. Nelson indicating that Phillips was still "getting along fairly well," but was having "a progressive worsening stiffness, soreness over his neck, pain radiating down his bilateral arms." Dr. Nelson referred Phillips for an MRI and wrote him a letter regarding his "somewhat high" cholesterol, and noted: "I really think it is time to get very serious about your diet and exercise program";

22. A January 23, 2003 report from a cervical spine MRI indication an impression of right central herniation at C5-6 with cord impingement, broad based herniation at C6-7 without cord impingement, bulging disc at C3-4 and C4-5, and reversal of the cervical lordotic curve;

23. A January 28, 2003, office note from Dr. Nelson indicating that review of the MRI showed "progressive worsening of the herniation" with constant right-sided radiculopathy. Dr. Nelson

diagnosed herniation and radiculopathy and referred Phillips to Neurosurgery at West Virginia University for further evaluation. Dr. Nelson discussed possible surgical intervention and noted Phillips was "quite hesitant to proceed with surgery." Dr. Nelson further noted that there was "really no change in his status," and Phillips was "getting along with stiffness and soreness and progressively worsening pain";

24. A February 26, 2003 report from Dr. Voelker, a neurosurgeon, indicating "a chronic history of neck and arm pain for approximately the last 10 years, however, his symptoms have declined over the last five years." Phillips reported more symptoms in the right arm compared to the left, constant pain on the right for the past month-and-a-half, located over the right biceps and into the shoulder, intermittent left arm pain radiating from the posterior left arm into the lateral forearm, down into the thumb, index and middle fingers, with associated numbness and weakness on the left and ability to "control his pain with cervical traction and ice therapy at home until he performs any strenuous activities and then the symptoms return."

Physical examination revealed a steady gait, muscle strength within normal limits, dysesthesia of the left C6 dermatome, 2+ deep tendon reflexes throughout, and negative "Hoffman's" Dr. Voelker reviewed the January 23, 2003, MRI and noted that it "revealed

moderate disk bulge on the right at C5-C6, with mild neural compression [and] a mild disk bulge on the left at C6-7 with no nerve root compression."

Dr. Voelker opined that the right C5-6 disc change might be causing some of the right arm pain, that surgery would not help the chronic neck pain or left arm symptoms but that Phillips might benefit from continuing physical therapy as well as anti-inflammatories;

25. A February 27, 2003, Internal Medicine Examination report from Kip Beard, M.D. who examined Phillips at the request of the State Disability Determination Service. Dr. Beard indicated:

> The claimant is a 52-year-old male with history of chronic neck pain. He has had multiple injuries in the past and by 1992, he has had ongoing problems with his neck and predominantly his left arm. He presents with an MRI today. I looked this over and it appears to show herniated disc with cord impingement at the C5-C6 and C6-C7 level. The patient has been recently evaluated by neurosurgery and given several options. Examination of the neck reveals limited motion. there is some tenderness in muscular rigidity present. Reflexes seemed diffusely increased. There is a bilateral Hoffman signs [sic] and two beats of clonus. These findings are suggestive of early myelopathy. I did not appreciate spasticity today. There is diminished sensation in the left arm which seems nonspecific for single nerve root distribution. I questioned maybe some slight weakness of the left wrist and left grip strength is diminished compared to the right. Fine manipulation is well preserved. Lower

> back exam reveals no evidence of lumbar radiculopathy present. There is some diminished motion in the back with tenderness.
>
> Examination of the arms and legs reveal some limited shoulder motion associated with shoulder girdle and neck discomfort. Range of motion of the knees is well preserved, but there is tenderness and patellar crepitations present. The claimant ambulates with somewhat stiff neck posture and had some difficulty functional ambulatory testing associated with neck discomfort. He presents without ambulatory aids today.

Physical examination revealed pain on range of motion testing of the cervical spine, paravertebral and spinous process tenderness, some paravertebral muscular rigidity without spasm, flexion to 40 degrees, extension to 35 degrees, lateral bending 30 degrees to the right and 35 degrees to the left, and rotation 60 degrees to the right and 50 degrees to the left, shoulder girdle and neck discomfort with range of motion testing of the shoulders, range of motion was abduction at 110 degrees and forward flexion at 130 degrees, no pain, tenderness, redness or warmth and normal motion in his elbows and wrists, no tenderness, redness, warmth or swelling and full range of motion in his hands, ability to make a fist bilaterally, no atrophy, grip strength of 100, 90, 90 pounds on the right and 40, 40, 45 pounds on the left, and ability to button and pick up coins with either hand and write with the dominant hand without difficulty.

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Neurologic examination revealed diminished sensation on the left distal arm affecting the first through third fingers, and questionable "maybe a slight degree of weakness of the left wrist," but strength still greater than 4- 4 ½ out of 5, well preserved fine manipulation, mid-biceps measured at 40 cm on the right and 30 cm on the left, equal mid-forearm measurements, 3+ deep tendon reflexes throughout, bilateral Hoffmann sign and two beats of clonus without Babinski, and ability to heel walk, heel-to-toe walk, and squat with difficulty rising from a squat.

Dr. Beard diagnosed chronic neck pain – chronic cervical myofascial pain superimposed upon degenerative disc disease with spinal canal stenosis and evidence of early myelopathy, chronic lower back pain – chronic lumbar myofascial pain, probably superimposed upon degenerative disc disease, and bilateral knee pain, possibly due to osteoarthritis, some limited shoulder motion associated with shoulder girdle and neck discomfort, ambulation with a somewhat stiff neck posture, and some difficulty with functional ambulatory testing associated with neck discomfort;

26.  A March 18, 2003, Physical Residual Functional Capacity Assessment (RFC"), from  Thomas Lauderman, D.O. , a state agency reviewing physician, indicating Phillips retained the ability to lift 20 pounds occasionally, 10 pounds frequently, stand/walk about six hours in an eight-hour workday, sit about six hours in an

eight-hour workday, occasionally do all posturals, except never climb ladders, ropes, or scaffolds, no manipulative limitations, and must avoid concentrated exposure to temperature extremes, vibration and hazards.

Significantly, Dr. Lauderman reviewed Dr. Nelson's October 2002 opinion that indicated Phillips was "totally disabled," disagreed and indicated that Phillips retained the ability to work at the light exertional level;

27.   An April 21, 2003, office note from Dr. Nelson indicating "doing pretty well."  Physical examination revealed Phillips was "still having some pain over his neck and some pain running down his arm" and he was "a little bit stiff and sore";

28.   A May 2, 2003, RFC from Cynthia Osborne, a State agency reviewing physician, indicating agreement with Dr. Lauderman's findings. Dr. Osborne determined that Phillips retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds, stand about 6 hours in an 8-hour workday, sit about six hours in an 8-hour workday, and unlimited ability to push and pull, occasionally climb, stoop, kneel, crouch and crawl, no manipulative, visual, or communicative limitations, and no environmental limitations except avoid concentrated exposure to extreme cold and hazards. Dr. Osborne indicated that Phillips retained the ability to perform work at the light exertional level;

29.  A July 23, 2003, office note from Dr. Nelson indicating Phillips reported "[g]etting along fairly well", a loss of three pounds, and "some pain in his neck [and] some stiffness and soreness down into his back as well";

30.  A September 15, 2003, office note from Dr. Nelson indicating Phillips was still "getting along fairly well" but had not been following his diet or exercise program and as a result his weight and blood pressure were both elevated. Dr. Nelson encouraged Phillips to increase his diet and exercise; and

31.  An additional September 15, 2003 office note from Dr. Nelson indicating that Phillips was "still having stiffness and soreness [and] had disability forms he wants filled out."  Dr. Nelson filled out the forms and indicated, under "prognosis," that "I think he is permanently and totally disabled."

## VI.  DISCUSSION

### A. 404, Subpt. P, App. 1, Listing 1.04

Phillips alleges that the ALJ erred in determining that he did not meet the requirements for Listing 1.04.  Listing 1.04 provides:

> *Disorders of the spine* (*e.g.* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:

A.   Evidence of nerve root compression
characterized by neuro-anatomic
distribution of pain, limitation of
motion of the spine, motor loss (atrophy
with associated muscle weakness or muscle
weakness) accompanied by sensory or
reflex loss and, if there is involvement
of the lower back, positive straight-leg
raising test (sitting and supine).

The ALJ determined:

that the claimant has neck pain syndrome with
C5-6 and C6-7 bulging discs, degenerative
spondylosis and a general anxiety disorder,
impairments that are 'severe' within the
meaning of the Regulations but not 'severe'
enough to meet or medically equal, either
singly or in combination to one of the
impairments listed in Appendix 1, Subpart P,
Regulations No. 4. Looking at the claimant's
neck pain syndrome under listing 1.04,
*Disorders of the spine*, the claimant does have
some nerve root compression, described as
'mild' by Dr. Voelker, and limitation in his
range of motion along with some pain. However,
the record did not document motor loss due to
muscle weakness. Therefore, the evidence is
insufficient to warrant finding that the
claimant's neck pain syndrome meets the
requirements of Listing 1.04A. Even including
the documented degenerative spondylosis, the
claimant does not meet the requirements of any
impairment under listing 1.00. Looking at the
claimant's anxiety under listing 12.06,
*Anxiety Related Disorders*, there was no
medically documented findings of a generalized
persistent anxiety accompanied by of [sic] the
symptoms in the listing. The claimant is
anxious, but not to the level required to meet
the listing level impairment.

Phillips relies on the opinion of Dr. Kip Beard, an examining

physician, who examined him on February 27, 2003 and found the mid-

biceps measurements were 40 cm on the right and 30 cm on the left and also questioned whether there was "some slight weakness of the left wrist and left grip strength is diminished compare to the right."[1] Significantly, Dr. Joseph Voelker, a neurologist, examined Phillips on February 26, 2003, the day before Dr. Beard's examination, and specifically found "[m]uscle strength within normal limits."

As noted above, on physical examination in 2003, Dr. Voelker determined that Phillips had a steady gait, muscle strength within normal limits, dysesthesia of the left C6 dermatome, 2+ deep tendon reflexes throughout, and negative "Hoffman's" Dr. Voelker reviewed the January 23, 2003 MRI and noted that it "revealed moderate disk bulge on the right at C5-C6, with mild neural compression [and] a mild disk bulge on the left at C6-7 with no nerve root compression." Dr. Voelker opined that the right C5-6 disc change might be causing some of the right arm pain, that surgery would not

---

[1]Listing 1.00E provides:

[A] report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of . . . both upper and lower arms, as appropriate, at a stated point above and below . . . the elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscles in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength.

help the chronic neck pain or left arm symptoms but that Phillips might benefit from continuing physical therapy as well as anti-inflammatories.

The Magistrate Judge noted that a conflict regarding muscle weakness existed between the opinions of the two examining physicians. He further noted that Dr. Beard examined Phillips one time at the request of the state agency and Dr. Voelker examined Phillips twice, once in 1998 and again in 2003, at the request of Phillips' treating physician, Dr. Kelly Nelson.

The Fourth Circuit stated in <u>Hays v. Sullivan</u>, 907 F.2d 1453 (4th Cir. 1990):

> Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano, 599 F.2d 597, 599 (4th Cir.1979)* ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir.1976)* ("We note that it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."); *Blalock v. Richardson, 483 F.2d at 775* ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' ").

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

The Magistrate Judge concluded that the ALJ did not err by resolving the conflict between the two physicians' opinions in favor of Dr. Voelker's opinion and, thus, did not err in determining that Phillips did not have the required muscle weakness necessary to meet the requirements of Listing 1.04. Moreover, the Magistrate Judge noted that the opinions of the state agency physicians, Dr. Lauderman and Dr. Osborne, supported the ALJ's finding that Phillips' impairments did not satisfy the requirements of Listing 1.04. As noted above, both Dr. Lauderman and Dr. Osborne determined that, even with the limitations noted in their reports, Phillips retained the ability to perform work at the light exertional level.

It is significant that, only six weeks after Dr. Beard's examination, the office notes of Dr. Nelson, Phillips' treating physician, reflect that Phillips reported he was "getting along well." Dr. Nelson's notes further indicate that physical examination revealed Phillips was "still having some pain over his neck and some pain running down his arm" and that he was "a little bit stiff and sore." Two months later, Dr. Nelson's notes reflect that Phillips again reported "[g]etting along fairly well, although he did have "some pain in his neck [and] some stiffness and soreness down into his back as well." Significantly, Dr. Nelson's notes do not reflect that Phillips reported any muscle weakness.

24

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

After careful review of all of the evidence of record, the Magistrate Judge determined that the record contained substantial evidence to support the ALJ's determination that Phillips did not meet the requirements contained in Listing 1.04. The Court agrees.

B. RFC

Plaintiff also contends that the ALJ failed to reduce his residual functional capacity ("RFC") based on clear evidence of a significant worsening in his condition. While the record does contain some evidence regarding a worsening of Phillips' neck condition, there is no requirement that the ALJ must correspondingly decrease Phillips' exertional level or increase his functional limitations. In Gross v. Heckler, 785 F.2d 1163 (4 th Cir. 1986), the Fourth Circuit held that a mere diagnosis of a condition is not enough to prove disability. There must be a showing of related functional loss.

In 1998, Dr. Voelker examined an MRI report and indicated that the MRI showed a mild right C5-6 disc bulge and also a mild left C6-7 disc bulge without any apparent underlying nerve root compression. Five years later, in 2003 Dr. Voelker examined another MRI report that "revealed moderated disk bulge on the right at C5-C6 with mild neural compression [and] mild disk bulge on the left at C6-C7 with no nerve root compression." These two MRI

reports document a progression from no nerve root compression to mild nerve root compression.

The 2001 decision of the ALJ indicated that the final record considered by the ALJ was the February 5, 2001, report from Dr. Nelson, in which Phillips reported that he felt "pretty good," still had pain in his neck and pain going down his arms, but was "getting along pretty well." Furthermore, shortly before the ALJ rendered his decision, the record indicates that Phillips was still getting along "quite well," had "some stiffness and soreness over his neck [but] [o]therwise the pain runs down his arms on an intermittent bases." [sic].

Similarly, following the MRI in 2003, Phillips reported to Dr. Nelson that he was "getting along well" and physical examination revealed he was "still having some pain over his neck and some pain running down his arm" and was "a little bit stiff and sore." Two months later, Phillips again reported "[g]etting along fairly well, although he did have "some pain in his neck [and] some stiffness and soreness down into his back as well."

The Magistrate Judge concluded that the evidence of record did not demonstrate that the change in Phillips' condition had caused a significant change in his actual symptoms or limitations. Significant to that conclusion was the fact that, in 2003 both Dr. Lauderman and Dr. Osborne, the state agency reviewing physicians,

examined Phillips and determined that he retained the ability to perform work at the light exertional level.

The Magistrate Judge, therefore, determined that, although Phillips' condition may have worsened, the record contained substantial evidence to support the ALJ's determination that Phillips retained the ability to perform limited light work. The Court agrees.

C.   Commissioner's Response to Phillips' Objections

In its response to the objections, the Commissioner contends that the objections are merely a re-argument of the allegations in Phillips' motion for summary judgment. As to Phillips' renewed argument that he meets the requirements contained in § 1.04 of the Listing of Impairments, the Commissioner contends that Phillips again ignores the introductory language of the musculoskeletal listing that clarifies that "musculoskeletal disorders must result in a loss of function." 20 C.F.R.pt. 404, subpt. P, app. 1, § 1.00A,B provides that the definition for loss of function for cervical impairments means a resulting "inability to perform fine and gross movements effectively."

20 C.F.R. Pt. 404, subpt. P, app. 1, § 100B(2)(c) provides:

> *What we mean by inability to perform fine and gross movements effectively.* Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that

> interferes very seriously with the
> individual's ability to independently
> initiate, sustain, or complete activities. To
> use their upper extremities effectively,
> individuals must be capable of sustaining such
> functions as reaching, pushing, pulling,
> grasping and fingering to be able to carry out
> activities of daily living. Therefore,
> examples of inability to perform fine and
> gross movements effectively include, but are
> not limited to, the inability to prepare a
> simple meal and feed oneself, the inability to
> take care of personal hygiene, the inability
> to sort and handle papers or files, an the
> inability to place files in a file cabinet at
> or above waist level.

The evidence in the record establishes that Phillips retains
the ability to perform fine and gross movements effectively. In
fact, in his February 27, 2003 report, Dr. Beard reported that
Phillips' "fine manipulation ability was well preserved".
Additionally, as already noted, both Dr. Lauderman and Dr. Osborne
determined that Phillips had no limitation in fine or gross
manipulation.

Phillips also renews his argument that the ALJ's determination
that he retains the RFC for a limited range of light work "must be
incorrect because the prior ALJ also found that he could perform a
limited range of light work" and his "worsening condition must
logically yield a reduced RFC". As noted above, the Fourth Circuit
in Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986), held that a mere

diagnosis of a condition is not enough to prove disability. There also must be a showing of related functional loss.

In his reply to the Commissioner's response, Phillips contends that Listing 1.04A does not require the loss of function. While Listing 1.04 A itself does not specifically include the words "loss of function", the introductory material does include that language.

Nevertheless, Listing 1.04A does specifically require "motor loss (atrophy with associated muscle weakness or muscle weakness ) accompanied by sensory or reflex loss . . . ." Thus, even accepting Phillips' contention that Listing 1.04A does not require a loss of function, the evidence in the record does not substantiate that he meets the necessary requirement in Listing 1.04A regarding muscle weakness.

## VII. CONCLUSION

After careful examination of Phillips' objections, the Commissioner's response to those objections and Phillips' reply to that response, the Court concludes that Phillips has not raised any issues that were not thoroughly considered by Magistrate Kaull in his report and recommendation. Moreover, after an independent de novo consideration of all matters now before it, the Court is of the opinion that the Report and Recommendation accurately reflects

## ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

the law applicable to the facts and circumstances before the Court
in this action.  Therefore, The Court **ORDERS AS FOLLOWS**:

1.   Magistrate Kaull's Report and Recommendation is accepted
     in whole;

2.   The defendant's motion for Summary Judgment (Docket No.
     10) is **GRANTED**;

3.   The plaintiff's motion for Summary Judgment (Docket No.
     9) is **DENIED**; and

4.   This civil action is **DISMISSED WITH PREJUDICE** and **RETIRED**
     from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment
order. Fed.R.Civ.P. 58.

The Clerk of the Court is directed to transmit copies of this
Order to counsel of record.

DATED: March 19, 2007.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE